**SOUTHERN CALIFORNIA EDISON COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Public Utilities Commission of the State of California, et al., Intervenors.**

**No. 97–1450.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 16, 1998.

Decided Dec. 11, 1998.

As Amended Feb. 4, 1999.

---

John G. Roberts, Jr. argued the cause for petitioner. With him on the briefs were Kevin J. Lipson, Richard T. Saas, Catherine E. Stetson and Stephen E. Pickett.

Larry D. Gasteiger, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were Jay L. Witkin, Solicitor, and Susan J. Court, Special Counsel.

Richard C. Green argued the cause for intervenors El Paso Natural Gas Company, et al. With him on the brief were Judy A. Johnson, Kenneth M. Minesinger, James R. McCotter, David L. Huard, Patrick G. Golden, Joel L. Greene, John P. Gregg, Michael Hall, Kelly A. Daly, James H. McGrew, James F. Moriarty, Katherine B. Edwards, John C. Walley, Douglas M. Canter and Barbara S. Jost. David W. Anderson and Kim M. Clark entered appearances.

Before: EDWARDS, Chief Judge, WILLIAMS and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Petitioner Southern California Edison Company ("Edison") is an electric utility, and Southern California Gas Company ("SoCal") is a gas distributor—a local distribution company or LDC. To supply gas for the generation of electricity, Edison buys firm gas transportation service on the pipeline systems of both El Paso Natural Gas Company and SoCal. In a curious way (described below), Edison is not only a direct customer of El Paso, but, through SoCal, a kind of indirect customer. In 1995 El Paso filed new transportation rates with the Federal Energy Regulatory Commission under § 4 of the Natural Gas Act, 15 U.S.C. § 717c, and made an offer of settlement to which most of its customers agreed. Edison objected, raising claims that in a disputed rate case would have entitled Edison to a hearing (according to the unreversed determination of the administrative law judge, *El Paso Natural Gas Co.*, 78 FERC ¶ 63,006 at 65,131 (1997)). The Commission approved the settlement as "uncontested," protecting Edison's interests as a direct customer by severing it and allowing it to pursue its objections outside the settlement. But the Commission denied Edison any right to either severance or litigation in its role as an indirect customer of El Paso. See *El Paso Natural Gas Co.*, 79 FERC ¶ 61,028, *reh'g denied*, 80 FERC ¶ 61,084 (1997). Finding the Commission order inconsistent with the settlement precedents of both the Commission and this court, we reverse.

\*       \*       \*

Edison's role as an indirect customer of El Paso arises from gas industry restructuring.

SoCal formerly sold gas both to its "core" customers (largely residential as we understand it) and to non-core ones such as Edison. As a result of restructuring, it now sells gas only to its "core" customers. SoCal still sells *transportation* services to the non-core customers. Thus Edison buys gas and ships it via El Paso to California, and via SoCal to its generating stations.

But because of SoCal's now abandoned sales service to non-core customers, it had reserved much more capacity on El Paso and other interstate pipeline systems than it now needs. To minimize its loss on this resource, SoCal sells the surplus capacity into the secondary market. Because the available capacity far exceeds demand, however, the resulting revenues fall well below SoCal's cost. See 79 FERC ¶ 61,028 at 61,126. The California Public Utilities Commission ("CPUC") allows it to make up the loss by a charge to its non-core customers called the Interstate Transition Cost Surcharge ("ITCS"). See *id.* at 61,128–29 n. 21.

The only issue before us is the propriety of FERC's refusal either to hold up the settlement pending resolution of Edison's merits claims as an indirect customer, or to sever Edison from the settlement in both its capacities. Edison argues that the refusal was improper under both the Commission's precedents and our own. We examine the two sets of authorities in turn.

\* \* \*

In *United Gas Pipeline Co.,* 55 FERC ¶ 61,070, 125 P.U.R.4th 527 (1991), *reh'g denied,* 64 FERC ¶ 61,014 (1993), the Commission allowed indirect customers of a pipeline to block a settlement. The Commission here attempted to distinguish *United* in two ways. It first argued that, unlike the indirect customers in *United,* whose rates from direct customers were under FERC's jurisdiction, Edison "is concerned about SoCal's rate to its intrastate customers, ... which is a matter over which this Commission has no jurisdiction." 80 FERC ¶ 61,084 at 61,294. This is blind to Edison's claim. Edison challenges the validity of the settlement's allocation of costs to El Paso's customers—including SoCal—not the subsequent allocation of SoCal's share to Edison. Equally blind is the Com-

mission's suggestion that Edison's problems are of its own making, as it agreed before CPUC to bear a specified share of the ITSC. *Id.* Edison's agreement before CPUC to bear a share of costs being determined by FERC cannot possibly have waived its rights to challenge the *size* of the cost it has agreed to share.

A similar misunderstanding underlies the Commission's second proposed distinction. In *United,* it said, "[t]he relief that the objectors sought would require a different allocation than the one provided in the settlement." *Id.* Rejection of the settlement was proper because the indirect customers' objections went "to the very basis of the settlement." *Id.* Here, by contrast, Edison "can litigate its rate with El Paso, without affecting the consenting parties' rate." *Id.* This appears simply to change the subject. Of course the Commission's order lets Edison pursue its objections as a direct customer; but that does not enable it to pursue them as an indirect customer, even though, so far as appears, they go "to the very basis of the settlement" every bit as much as the objections in *United.*

Although not raised by the Commission, another possible distinction suggests itself. The Commission's order denying rehearing in *United,* after recognizing the general interest of indirect customers in the allocation of costs to their immediate upstream suppliers, see 64 FERC ¶ 61,014 at 61,097, noted the particular unfairness possible if that settlement were approved over the indirect customers' objection: since the downstream cost-allocation proceedings had not yet occurred, the indirect customers could have challenged the direct customers' acceptance of the settlement there, which if the challenge were successful would have left these direct customers "trapped" with higher costs than they could pass on. *Id.* at 61,097–98. But the current situation seems to present at least as compelling a scenario: instead of the customer in the middle being stuck because of the upstream settlement, the indirect customer (Edison) will be stuck with the fait accompli of the costs SoCal has agreed to bear.

While *United* might perhaps be distinguished here, the Commission has not done so.

\*      \*      \*

This court has also found indirect customers entitled to contest Commission-approved settlements. *Tejas Power Corp. v. FERC*, 908 F.2d 998 (D.C.Cir.1990), held that the Commission erred in approving a settlement, over the objections of indirect customers, solely on the basis of the direct customers' approval. We found that these indirect customers' challenge "triggers the Commission's obligation, under § 7 of the NGA and § 385.602(h)(1)(i) of its rules, to examine the potential impact of the [settlement] upon [the indirect customers'] interests and to support its conclusions with substantial evidence." *Id.* at 1003.

Of course the Commission might satisfy that obligation either by deciding on the merits any genuine issue of material fact or, if it were possible, executing a severance that would fully protect the objecting party's interests. But *Tejas Power* allowed an alternative, saying that "the Commission must, at a minimum, address the question of whether the [direct customers'] interests are sufficiently likely to be congruent with those of ultimate consumers that it may rely upon the [direct customers'] agreement as dispositive of the consumers' interests." *Id.* at 1004.

The Commission points to no such congruence of interests here. It mentioned three sets of parties that agreed to the settlement: CPUC and its Nevada regulatory counterpart, El Paso's customers generally, and SoCal. FERC's emphasis on the state commissions' agreement seems to be based on a misreading of *Tejas Power*. We did in fact direct the Commission to look to the role of the states, but only in their capacity as downstream rate-setters, and thus as possible wielders of power to protect the ultimate consumers from being "saddled with unwarranted expenses that the LDC may have had little incentive to avoid." See *id.* at 1004. The probability of such protection here has certainly not been established. Nor do we see, given the usual limits of agency staff resources, why CPUC's approval could be deemed to rest on any more penetrating scrutiny than that of FERC itself.

The support for the settlement from the bulk of El Paso's customers, while entitled to "some weight" with the Commission, *Laclede Gas Co. v. FERC*, 997 F.2d 936, 946 (D.C.Cir. 1993), is itself not enough, and would not be even if unanimous, *id.*; see also *Tejas Power*, 908 F.2d at 1003.

As to SoCal, finally, the Commission attempted to make a showing that met the standard of *Tejas Power* for using a direct customer as a surrogate for indirect ones— i.e., a finding that it had interests so "likely to be congruent with those of ultimate consumers that [the Commission] may rely upon [its] agreement as dispositive of the consumers' interests, notwithstanding the claim of some large and sophisticated consumers to the contrary." 908 F.2d at 1004. Endeavoring to show such alignment, the Commission wrote:

> We believe there is merit in El Paso's contention that as a result of recent decisions by the CPUC and the California legislature, electric energy sold in the future in California is likely to be subject to market competition. LDCs in California may no longer be able to assume that they will be able to automatically pass through generation costs, including gas costs, that they have incurred, and any regulatory shield that those LDCs might have enjoyed in the past may be diminished. Thus, LDCs, at least in California, have an incentive, as do end-users, to negotiate the most favorable interstate rate.

79 FERC ¶ 61,028 at 61,130 (footnotes omitted). This seems to us too confused to pass muster. First, when the Commission (or its opinion-writing staff) writes of an LDC having "incurred" "generation costs," it leads one to suspect it has not decided what industry it is describing—gas distribution or electricity generation. Second, competition at the electricity generation level is completely consistent with the gas distributor's possessing a monopoly. The Commission's murmuring's here are not enough to show a substantial congruity of interests.

\*      \*      \*

The Commission has neither adequately distinguished its own precedents nor fulfilled the minimum requirements of ours. We accordingly grant the petition for review and remand the case.

*So ordered.*