WILLIAMS FIELD SERVICES
GROUP, INC., et al.,
Petitioners,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.

Salt River Project Agricultural Improvement and Power District,
et al., Intervenors.

Nos. 98–1241, 98–1329–98–
1331 and 98–1352.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 8, 1999.

Decided Oct. 26, 1999.

Rehearing Denied Dec. 17, 1999.

Richard C. Green argued the cause for petitioners Amoco Production Company, et al. on the jurisdictional issue. With him on the briefs were Judy A. Johnson, Kenneth M. Minesinger, Robert M. Lamkin, James R. McCotter, Frederick T. Kolb, Katherine B. Edwards, and Bruce A. Connell.

Katherine B. Edwards argued the cause for petitioners Amoco Energy Trading Corporation, et al. on the nonjurisdictional issues. With her on the briefs were Frederick T. Kolb and Bruce A. Connell.

Joseph S. Koury argued the cause for petitioner Williams Field Services Group, Inc. With him on the briefs was Mari M. Ramsey.

Judith A. Albert, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were, Jay L. Witkin, Solicitor, and Susan J. Court, Special Counsel.

Richard C. Green, Judy A. Johnson, Kenneth M. Minesinger, Robert M. Lamkin, and James R. McCotter were on the brief for intervenor El Paso Natural Gas Company in partial support of respondent.

Joseph S. Koury and Mari M. Ramsey were on the brief for intervenor Williams Field Services Group, Inc. in partial support of respondent.

Before: EDWARDS, Chief Judge, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Numerous issues have been raised in this case. The principal issue before the court, however, is whether a natural gas compressor, the Chaco compressor station, is a "gathering" facility or a "transmission" facility. A transmission facility is subject to the regulatory jurisdiction of the Federal Energy Regulatory Commission ("FERC" or "Commission"), whereas a gathering facility is not. El Paso Natural

Gas ("El Paso") sought to transfer all of its gathering facilities to its subsidiary, El Paso Field Services ("Field Services"), but it did not transfer the Chaco compressor station. El Paso claims the Chaco compressor station is a transmission facility. Williams Field Services ("Williams"), a competitor of Field Services and a petitioner in this case, disagrees. FERC also now disagrees and, after initially deciding otherwise, has found that the Chaco compressor station is a gathering facility because its pressure is necessary both to process the natural gas and to overcome the pressure on the mainline to deliver the natural·gas. El Paso argues that this decision was arbitrary and should be overturned. Because FERC's decision is consistent with its precedent and well-reasoned, we uphold it.

The related issue in this case is whether and how FERC's decision that the Chaco compressor station served a gathering function should have affected El Paso's rates. Before FERC rendered its decision regarding the Chaco compressor station, El Paso entered into a Rate Settlement ("Settlement") with various shippers. In § 15.2 of this Settlement, the parties agreed to treat the Chaco compressor as a transmission facility for the purpose of the rates agreed to in the Settlement. FERC approved the Settlement.

As mentioned above, FERC initially decided that the Chaco compressor station served a transmission function. This decision was consistent with the Settlement. Its decision to reverse that finding caused problems. Williams argued that because the Commission had determined that the Chaco compressor was a gathering facility, it was unfair to allow El Paso to include Chaco's costs in its transmission rates. Williams argued that FERC should remedy this inconsistency by forcing El Paso to remove the costs of the Chaco compressor from its transmission rates. The Indicated Shippers, the third set of petitioners in this case, had the opposite complaint. (The Indicated Shippers who appear be-fore this court are: petitioners Amoco Energy Trading Corp., Amoco Production Co., Burlington Resources Oil & Gas Co., and Conoco Inc., and intervenor Marathon Oil Co). They argued that § 15.2 precluded FERC from adjusting any of El Paso's rates, including fuel rates, as a result of its decision that the Chaco compressor was a gathering facility.

FERC split the baby. It agreed with the Indicated Shippers that § 15.2 precluded any change to El Paso's rates as a result of the Chaco compressor's changed status. It found, however, that fuel charges were not part of the rates referred to in § 15.2 and so could be adjusted to reflect the Chaco compressor's new status. In the meantime, this court remanded FERC's order approving the very Settlement that justified FERC's decision regarding the rate issues. *See Southern California Edison Co. v. FERC*, 162 F.3d 116 (D.C.Cir.1999) (*"Edison"*). As a result of the remand, the status of the Settlement is unclear. Because FERC's orders are dependent on an interpretation of a Settlement that is no longer settled, we vacate those orders as they relate to El Paso's Settlement and remand the issues raised by Williams and the Indicated Shippers.

## I. BACKGROUND

### A. The Abandonment Proceeding and the Settlement

In January of 1994, pursuant to § 7(b) of the Natural Gas Act ("NGA" or the "Act"), El Paso applied to abandon all of its nonjurisdictional gathering, treating, and processing facilities. *See* 15 U.S.C. § 717f(b) (1994). FERC has jurisdiction over the transmission of natural gas, but it does not have jurisdiction over the gathering, treating, or processing of natural gas. *See* 15 U.S.C. § 717(b) (1994). The line between the two is not always clear, but it is important. If a facility is "functionalized" as transmission, the regulated company—in this case, El Paso—may incorporate the cost of that facility into its rates.

If it is functionalized as gathering, it may not.

El Paso intended to abandon all of its nonjurisdictional facilities by transferring them to its wholly owned subsidiary, Field Services. The Chaco plant, located in the San Juan basin, was one of the systems that El Paso intended to transfer to Field Services. The Chaco plant consists of liquid extraction, dehydration, and compression facilities. El Paso transferred most of these facilities to Field Services. But one of the compressor stations, the Chaco compressor station, was not transferred to Field Services. The Chaco compressor station consists of 16 compressor units that have a total of 77,960 hp and that generate more than 800 pounds of pressure. *See El Paso Natural Gas Co.*, 81 F.E.R.C. ¶ 61,-209, at 61,890 (1997). The Chaco compressor pressurizes gas coming in from the fields before it enters a liquid extractor. Liquid extraction is a part of natural gas processing and the extractor is a nonjurisdictional facility. El Paso did not transfer the Chaco compressor station to Field Services because it believed that Chaco was necessary to preserve mainline capacity and so served a jurisdictional transmission function. Williams argued that the Chaco compressor was a gathering facility and should have been transferred to Field Services.

In September 1995, FERC approved El Paso's application to abandon its gathering facilities. *See El Paso Natural Gas Co.*, 72 F.E.R.C. ¶ 61,220 (1995). In that same order, however, FERC also required El Paso to show cause why it did not abandon the Chaco compressor. *See id.* at 62,020. After El Paso transferred the Chaco plant facilities to Field Services, Field Services replaced the liquid extractor, which used a "lean oil" method, with a new cryogenic liquid extractor. The relevant difference between the two is that, to function efficiently, the cryogenic extractor needs the large amounts of pressure produced by the Chaco compressor station.

Meanwhile, before the show cause proceeding regarding the Chaco compressor was completed, El Paso sought a rate increase in an entirely separate proceeding. In 1996, El Paso submitted a Settlement in that rate proceeding, which contained a provision relating to the pending dispute over the Chaco compressor. This provision, § 15.2, provides:

> 15.2 *Refunctionalization Issues.* In consideration of the other provisions of this Stipulation and Agreement, all El Paso facilities underlying the rates in Docket No. RP95–363–000, are properly functionalized as transmission facilities solely for the term of this Stipulation and Agreement. Accordingly, (i) the show cause proceeding in Docket No. CP94–183–002 shall be terminated without prejudice to later filings after the term of this Stipulation and Agreement; (ii) during the term of the Stipulation and Agreement, no party shall contest, in any Commission proceeding, the functionalization of El Paso's facilities; and (iii) regardless of any actions taken by the Commission or by non-consenting parties to this Settlement Agreement, the settlement rates established herein will not be subject to change during the term of this Stipulation and Agreement based on any refunctionalization issue.

Stipulation and Agreement in Settlement of Rate and Related Proceedings, *reprinted in* Joint Appendix ("J.A.") 661. Williams objected to § 15.2, arguing that if the Chaco compressor was later found to be nonjurisdictional, this provision would improperly allow El Paso to continue to incorporate Chaco's costs into its transmission rates. Williams complained that the effect of this provision is to subsidize Field Services because Field Services would not have to pay the compressor's costs.

Despite Williams' objections, FERC approved the Settlement on April 16, 1997, finding that it was a "fair and reasonable resolution of difficult issues." *El Paso Natural Gas Co.*, 79 F.E.R.C. ¶ 61,028, at 61,131 (1997), *reh'g denied,* 80 F.E.R.C.

¶ 61,084 (1997). With regard to the pending show cause proceeding, the Commission noted that was "issuing an order in that docket concluding that El Paso appropriately did not include the Chaco facilities among the facilities to be transferred to its gathering affiliate because the primary function of that facility is jurisdictional transmission." *Id.* Soon after, FERC issued an order in the show cause proceeding finding that the Chaco compressor functioned as a transmission facility and was therefore properly functionalized as jurisdictional by El Paso. *See El Paso Natural Gas Co.,* 79 F.E.R.C. ¶ 61,079 (1997). This order was consistent with FERC's order approving the Settlement: Both orders provided that the Chaco compressor was a jurisdictional facility.

## B. The Refunctionalization of Chaco and the Ensuing Disputes

Subsequently, in response to objections from Williams and others, FERC requested more information from El Paso about the functions of the Chaco compressor. On November 14, after receiving that new information, FERC granted a rehearing of its April 23 order, reversed its position, and declared that the Chaco compressor performed a nonjurisdictional gathering function. *See El Paso Natural Gas Co.,* 81 F.E.R.C. ¶ 61,209. FERC based this decision on two grounds: (1) the Chaco compressor station's compression "is required to increase the pressure of the natural gas stream ... to ensure an efficient cryogenic liquids extraction process," *id.* at 61,891, a process that all agree is nonjurisdictional; and (2) Chaco's compression is necessary to overcome the pressure in the mainline, which, pursuant to El Paso's tariffs, is the gatherer's (in this case, Field Service's) responsibility. *See id.* at 61,892. FERC rejected El Paso's contention that the Chaco compressor was necessary to maintain capacity on the pipeline. *See id.* FERC noted that, because high compression "is required to satisfy the delivery pressure to El Paso's system, pursuant to El Paso's effective tariff, reclassification of the Cha-

co Compressor Station from transmission to gathering would not reduce the capacity of the San Juan Triangle System ..." *Id.*

This order failed to satisfy anyone. While Williams agreed with the refunctionalization of Chaco, it was not satisfied with FERC's failure to address this order's impact on El Paso's rates. Williams requested a clarification, or a hearing, addressing its claim that the Chaco compressor should be removed from El Paso's transmission rates. *See* Request for Clarification, or Alternatively Rehearing, of Williams Field Services Group, Inc., *reprinted in* J.A. 818. Williams argued that "the Commission should clarify that El Paso must now include the Chaco compressor station among the facilities transferred to Field Services and completely remove those facilities from El Paso's jurisdictional transmission services and rates." *Id.* at 822. In a footnote, Williams noted that the Commission had the "authority and the responsibility" to remedy the discrepancy under § 5 of the NGA. *Id.* at 822 n. 3 (citing 15 U.S.C. § 717d (1994)).

El Paso and the Indicated Shippers objected to the refunctionalization of the Chaco compressor and requested a rehearing. In addition, El Paso understood FERC's order to mean that the location of or operation at the cryogenic plant did not impact the Chaco compressor's jurisdictional status. El Paso asked FERC to clarify this point. The Indicated Shippers requested clarification on the rate issue. Specifically, they asked FERC to clarify that the settlement rates embodied in the Settlement, including transportation and fuel, would not change as a result of the refunctionalization. The Indicated Shippers were particularly concerned about possible modifications to fuel rates and emphasized that fuel charges are part of the settlement rates covered in Section 15.2 of the parties' Settlement.

On rehearing, FERC affirmed its decision to functionalize the Chaco compressor station as a nonjurisdictional gathering fa-

cility. *See El Paso Natural Gas Co.,* 82 F.E.R.C. ¶ 61,337 (1998). In response to El Paso's request for clarification, FERC noted that its "decision that the Chaco compression performs a gathering function is affected by both the location of and the operations at the cryogenic plant." *Id.* at 62,336. With regard to the rate issue, FERC determined that it would not upset the Settlement and that settlement rates would not change despite the Chaco refunctionalization. *See id* at 62,340. It also found, however, that the fuel charges are not part of the settlement rates and would be adjusted to reflect the refunctionalization of Chaco during the next modification period. *See id.* FERC determined that "there will be no fuel costs associated with the Chaco facilities to include in the calculation of the fuel charges to take effect January 1, 2001 and thereafter." *Id.*

Williams filed the instant appeal arguing that FERC did not provide an adequate remedy for the refunctionalization of the Chaco compressor. El Paso and the Indicated Shippers requested another rehearing. El Paso contested FERC's finding that the relationship between the cryogenic liquid extractor and the Chaco compressor supported functionalizing the compressor as a gathering facility. The Indicated Shippers contested FERC's finding that the fuel costs could be adjusted to reflect the refunctionalization of the Chaco compressor. They noted that the Settlement stipulated that the show cause proceeding was to be terminated for the settling parties, so FERC's decision in the show cause proceeding cannot impact the fuel rates for settling parties.

On July 20, FERC denied these requests for rehearing. *See El Paso Natural Gas Co.,* 84 F.E.R.C. ¶ 61,048 (1998). In this order, FERC reiterated its view that because "fuel charges are not a part of the settlement rates," fuel rates could be adjusted. *Id.* at 61,203. FERC found that this decision was consistent with the stipulation in § 15.2 that the show cause proceeding was to be terminated. It rea-

soned that the purpose of terminating the show cause proceeding was to ensure that settlement rates did not change as a result of any refunctionalization; and because settlement rates did not change as a result of the refunctionalization, its order in the show cause proceeding was consistent with the Settlement. *See id* at 61,204. With regard to the functionalization of Chaco, FERC reaffirmed its prior decision noting that the "location and operation of the cryogenic plant were two of a number of factors that weigh against a finding that the compression performs a transmission function." *Id.* at 61,205. El Paso and the Indicated Shippers filed their petitions for review.

In the meantime, this court remanded FERC's April 1997 order approving El Paso's Settlement. *See Edison,* 162 F.3d 116. The court in *Edison* found that FERC had failed to provide for the interests of indirect consumers in the Settlement and remanded the case to FERC for reconsideration. As a result of this remand, the Settlement, which underlies the rate disputes in this case, is no longer settled. It has come to the court's attention that the parties involved in the *Edison* case have reached a tentative agreement resolving the issues that concerned the *Edison* court. The court is also aware that Williams is pursuing another complaint with FERC regarding the same rate concerns addressed in this case.

## II. ANALYSIS

### A. The Functionalization of the Chaco Compressor

■ In the orders under review, FERC found that the Chaco compressor station was a nonjurisdictional gathering facility. We review FERC's orders under the Administrative Procedure Act's arbitrary and capricious standard. 5 U.S.C. § 706(2)(A) (1994). *See Sithe/Independence Power Partners v. FERC,* 165 F.3d 944, 948 (D.C.Cir.1999). El Paso argues that FERC's decision was arbitrary because: (1) FERC misapplied the primary function

test; (2) FERC was wrong to consider the operation at the cryogenic processor; (3) FERC misapprehended the relationship between mainline capacity and the Chaco compression; and (4) this decision is inconsistent with FERC's precedent functionalizing similar compressors. El Paso's arguments fail. FERC applied the primary function test as well as it could have in this situation, properly considered the operation of the cryogenic processor, made a reasonable decision regarding the relationship between Chaco's compression and mainline capacity, and correctly distinguished this case from the precedents El Paso cites. We therefore uphold FERC's decision to functionalize the Chaco compressor station as a gathering facility.

 El Paso argues that FERC misapplied the primary function test. Under the NGA, the Commission has jurisdiction over the transportation, but not the processing or gathering of, natural gas. *See* 15 U.S.C. § 717(b) (1994). However, "[t]he line between jurisdictional transportation and nonjurisdictional gathering is not always clear. To draw that line, the Commission employs the 'primary function test,' which examines various factors to determine whether a facility is primarily devoted to gathering or to interstate transportation."*Conoco Inc. v. FERC,* 90 F.3d 536, 542 (D.C.Cir.1996). No single factor of the primary function test is determinative, and not all factors apply in every situation. *See id.* at 543. This is especially true here where the facility at issue is a compressor station. As El Paso itself noted, "[m]any if not most of these factors typically are present when the facility in question is a pipeline. They have less direct application, however, when the facility is a compressor." Joint Initial Br. of Petitioners at 12. The six factors of this test include: (1) the length and diameter of the relevant lines; (2) the extension of the facility beyond the central point in the field; (3) the lines' geographic configuration; (4) the location of compressors and processing plants; (5) the location of wells along all or part of the facility; and (6) the operating pressure of the lines. *Conoco,* 90 F.3d at 544 n. 16. FERC considered the test, but found only the fourth factor to be truly weighty.

In particular, FERC noted that "the compression's location upstream of the processing plant" was the factor under the primary function test that weighed heavily in favor of finding that the Chaco compressor was a gathering facility. 82 F.E.R.C. ¶ 61,337, at 62,336. This is a reasonable determination: The Commission's precedent establishes that a facility located behind a processing plant is more likely to perform a gathering function. *See Williams Natural Gas Co.,* 71 F.E.R.C. ¶ 61,115, at 61,375 (1995) (noting that the fact that the facilities are located behind the plant "strongly supports a finding that they are gathering").

Significantly, El Paso challenges FERC's application of the primary function test, but it offers no counter analysis. Thus, this is not a case where FERC has ignored applicable parts of the primary function test. *Cf. Louisiana Intrastate Gas Corp. v. FERC,* 962 F.2d 37, 42–43 (D.C.Cir.1992) (remanding consideration of a facility because FERC failed to apply the primary function test, which was indisputably applicable to that facility). Rather, "the Commission here gave reasoned consideration to each of the pertinent factors of the primary function test ..." *Conoco,* 90 F.3d at 544. However, because most of the factors of the primary function test do not apply to the Chaco compressor station, FERC's decision properly rests on additional considerations.

 El Paso next argues that to the extent that FERC relied on the operation of the cryogenic liquid extractor to determine the jurisdictional status of the Chaco compressor station, it was wrong to do so. The cryogenic liquid extractor is a nonjurisdictional processing facility that prepares the gas to go into El Paso's mainline. It replaced a lean-oil extractor in 1996, long after the Chaco compressor was

built. It requires the high pressure produced by the Chaco compressor in order to operate efficiently. El Paso argues that the Chaco compressor was operating before the cryogenic liquid extractor was installed and therefore installing the cryogenic extractor cannot change the function of the Chaco compressor. "Selection of the cryogenic method played no role whatsoever in determining the amount of compression to be constructed, because the compression was constructed long before the cryogenic plant was built, in an amount determined solely by the needs of mainline transmission." Joint Initial Br. of Petitioners at 22.

As FERC notes, what El Paso misses is the point that the cryogenic liquid extractor changed the purpose of the Chaco compressor. Prior to the installation of the cryogenic extractor, the Chaco compressor simply pressurized the gas to enter the mainline. After the installation of the cryogenic processor, the Chaco compressor's purpose changed to include assisting in the efficient (nonjurisdictional) processing of gas. Thus, because the cryogenic liquid extractor changed the purpose of the Chaco compressor station, it was reasonable for FERC to determine that the operation of the cryogenic processor weighs in favor of finding that the Chaco compressor is a gathering facility.

El Paso argues in the alternative that the Commission did not rely on the operation of the cryogenic extractor in making its decision about Chaco. El Paso noted that "it is far from clear that consideration of the cryogenic plant ... has any material impact on the Commission's jurisdictional analysis." Joint Reply Brief of Petitioners at 14. Admittedly, the Commission has been less than clear on this point. In the first rehearing before FERC, the Commission noted that the operation of the cryogenic liquid extractor "weighs against a finding that the compression performs a transmission function." 82 F.E.R.C. ¶ 61,-337, at 62,336. And while it reiterated that point in the second rehearing, noting

that the operation of the cryogenic plant is one of a "number of factors that weigh against a finding that the compressor performs a transmission function," it also stated that "the Chaco Compression would be nonjurisdictional gathering regardless of whether the cryogenic plant or any other nonjurisdictional processing facilities were located immediately downstream of the compression facilities." 84 F.E.R.C. ¶ 61,-048, at 61,205. Despite this language, in the three orders under review, FERC has explained extensively that the operation of the cryogenic liquid extractor impacts the jurisdictional status of the Chaco compressor. Thus, although some language in FERC's last order suggests otherwise, it is this court's understanding that the functionalization of Chaco as a gathering facility relies in part on the operation of the cryogenic liquid extractor.

■ El Paso's third argument is that because the Chaco compression is necessary to maintain its jurisdictional mainline capacity, the Chaco compression station is necessarily a jurisdictional facility. El Paso contends that "the Chaco compression is absolutely required as a matter of physics if the San Juan Triangle capacity is going to remain available to El Paso's jurisdictional transmission customers." Joint Initial Br. of Petitioners at 16. As a matter of physics, and a matter of fact, FERC does not disagree. As a legal matter, however, FERC comes to a different conclusion. Under FERC's view, the Chaco compressor is a gathering facility because it is necessary to "overcome" the pressure of El Paso's mainline system to deliver the natural gas. 81 F.E.R.C. ¶ 61,-209, at 61,892. In other words, FERC never directly disputes that the compression is necessary for capacity, it simply finds that the compression will be there because the natural gas gatherer, in this case Field Services, will supply it.

El Paso argues that this cannot be the basis for finding that the Chaco compressor is nonjurisdictional because that puts the responsibility for maintaining certified,

jurisdictional mainline capacity in nonjurisdictional, *i.e.*, unregulated hands. FERC has two responses. First, it notes that some of El Paso's mainline capacity is already in the hands of nonjurisdictional facilities. *See* 82 F.E.R.C. ¶ 61,337, at 62,-336. Second, it notes that El Paso's tariff requires the producer to deliver the gas to the pipeline at a pressure high enough to overcome the pressure in the pipeline. *See* 81 F.E.R.C. ¶ 61,209, at 61,892. FERC reasons that because this responsibility rests with the producer, the facility that enables the producer to meet it, here, the Chaco compressor, is necessarily a part of the production process, which is nonjurisdictional. Thus, FERC argues, the Chaco compressor is nonjurisdictional.

This is a line-drawing problem for which there is no easy answer. The Chaco compressor sits at the very edge between gathering and transmission. In such a situation, it is not this court's role to interpose its judgment. As this circuit has noted, "the Commission brings to bear its considerable expertise about the natural gas industry" when deciding whether a facility is jurisdictional or nonjurisdictional. *Conoco*, 90 F.3d at 544. El Paso has pointed to no significant evidence or reasoning that undermines FERC's decision here. This decision is further supported because it is consistent with recent cases in which FERC has decided that the pressure necessary to overcome mainline capacity is the last stage of the gathering process. *See GPM Gas Corp. v. El Paso Natural Gas Co.*, 81 F.E.R.C. ¶ 61,208, at 61,888 (1997) ("In addition, a significant boost in pressure is often necessary to enable gas to move from the lower pressure gathering system into transmission lines. The Commission has stated that this type of compression is also integral to the gathering function."). Thus, the Commission's reasoning here is not arbitrary.

As a final matter, El Paso argues that FERC's decision here is inconsistent with its precedent. This argument has no weight for the reason FERC gives: All of the cases El Paso cites can be distinguished from this one. The compressors in those cases fed directly into a pipeline without going through or assisting a nonjurisdictional processor, *see Colorado Interstate Gas Co.*, 75 F.E.R.C. ¶ 61,324, at 62,039 (1996); *Panhandle Eastern Pipe Line Co.*, 70 F.E.R.C. ¶ 61,178, at 61,583 (1995); *Amerada Hess Corp.*, 52 F.E.R.C. ¶ 61,268, at 62,012–13 (1990); *Williston Basin Interstate Pipeline Co.*, 33 F.E.R.C. ¶ 61,211, at 61,439 (1985); *United Gas Pipe Line Co.*, 29 F.E.R.C. ¶ 61,164, at 61,345 (1984), or were part of an outer continental shelf facility, which the Commission has determined to be different from on-shore facilities. *See Sea Robin Pipeline Co.*, 87 F.E.R.C. ¶ 61,384, at 62,-428 (1999). Thus, FERC's functionalization of the Chaco compressor as a nonjurisdictional gathering facility is upheld.

## B. The Rate Issues

■ Both the Indicated Shippers and Williams argue that FERC has improperly addressed the effect of the refunctionalization on El Paso's rates. The Indicated Shippers argue that FERC has gone too far by modifying the fuel charges; Williams argues that FERC has not gone far enough because it has not modified the remaining costs. In response, FERC relies on an interpretation of El Paso's Settlement. Because the status of that Settlement is no longer clear after this court's remand in *Edison*, FERC's orders under review are vacated insofar as they rely on an interpretation of the Settlement.

The Indicated Shippers argue that FERC's orders on review are inconsistent with its order approving the Settlement, specifically § 15.2. The Shippers argue that FERC was wrong to find that fuel charges could be adjusted to reflect the refunctionalization of the Chaco compressor because § 15.2 stipulated otherwise. As an initial matter, we note that FERC's interpretation of the Settlement is questionable. Section 15.2 stipulated that "all El Paso facilities underlying the rates in

Docket No. RP95–363–000," which includes the Chaco compressor, "are properly functionalized as transmission facilities." Stipulation and Agreement, *reprinted in* J.A. 661. Section 15.2(i) emphasized that the show cause proceeding for the Chaco compressor was to be terminated. Given these provisions, it is not clear that FERC could adjust the fuel charges with that Settlement in place. We need not decide the issue, however, because that Settlement may no longer be in place.

In 1998, this court remanded FERC's order approving the Settlement that underlies the disputes here. *See Edison,* 162 F.3d 116. As a result, the status of that Settlement is no longer clear. As FERC counsel noted,

> if on remand, the Commission determines to modify the settlement agreement—the interpretation of which underpins [the Indicated Shippers'] arguments here—based on the *Edison* Court's mandated areas of factual inquiry, litigation over the terms of the settlement agreement would yield nothing but an advisory opinion.

Br. for Respondent at 50. FERC's decisionmaking must be "reasoned, principled, and based upon the record." *Western Resources, Inc. v. FERC,* 9 F.3d 1568, 1572 (D.C.Cir.1993) (citation and quotation marks omitted). Without the Settlement in place, FERC's decisions relying on that Settlement have no reasoned, principled basis. Thus, insofar as FERC's orders depend on an interpretation of that Settlement, they are vacated. In other words, FERC's orders finding that the fuel charges can be modified at El Paso's next adjustment period are vacated and remanded to FERC.

Likewise, FERC's order denying Williams' request for a remedy is also vacated because it depends on an interpretation of the Settlement. Williams argues that FERC failed to order an adequate remedy after it refunctionalized Chaco from a transmission facility to a gathering facility. Specifically, Williams argues that FERC should have ordered El Paso "to remove the Chaco 'gathering' costs from El Paso's jurisdictional 'transmission' rates." Reply Br. of Petitioner Williams at 3. FERC denied Williams' request because it had approved El Paso's rate in the order approving the Settlement and it determined it would not upset that Settlement. First, it noted that the cost-of-service underlying the settlement rates is a "black box" number making it impossible to determine what costs of a particular facility were reflected in the settlement cost of service. *See* 82 F.E.R.C. ¶ 61,337, at 62,340. FERC then noted that settlements like this "involve a complex exchange of risks and benefits among the parties" and that it would "respect these quid pro quos because the results are in the public interest." *Id.* The very Settlement that FERC is purporting to respect is no longer settled, so FERC's justifications no longer hold weight. In addition, we note that at the time when FERC approved the Settlement, the Commission had decided to functionalize the Chaco compressor as a jurisdictional facility. Williams did not have a chance to challenge that Settlement because at that time it was not injured. Now that FERC has refunctionalized the Chaco compressor, Williams should be allowed to challenge the Settlement. Thus, the order denying Williams full consideration of its claims is vacated.

On remand, FERC must consider, in light of Williams' challenges, whether to again approve § 15.2. If it does uphold § 15.2, FERC must then consider the challenges raised by the Indicated Shippers. FERC is already in the process of reexamining these issues in the context of the remand in *Edison.* The parties in *Edison* have proposed a new settlement that specifically relies on the approval of the Settlement. Obviously FERC cannot simply rubberstamp this new settlement without reconsidering the issues raised by the parties in this case. Indeed, Williams appar-

ently has filed a complaint against El Paso, raising some of the same issues raised before this court.

On remand, it would be well for FERC to consolidate all these related matters to reach a single, coherent disposition of the outstanding issues. We vacate those portions of FERC's order that rely on an interpretation of the Settlement and remand the case to the agency to reconsider these issues in light of our opinion. We deny the petitions for review in all other respects.

*So ordered.*